BRUCE S. PORTNER
KIMBERLY L. PORTNER
2122 Centro East
Tiburon, California 94920
Tel: 415-519-3503
Email: lportner@aol.com

PLAINTIFFS IN PRO SE

FILED

MAY 29 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BRUCE S. PORTNER<br>KIMBERLY L. PORTNER<br><br>       Plaintiff(s),<br><br>vs.<br><br>SPECIALIZED LOAN SERVICING, LLC, NBS<br>DEFAULT SERVICE LLC, US BANK NA<br><br>And Does 1-100<br>       Defendant(s) | Case No.: 3:15-cv-01736-VC<br><br>Hon. Vince Chhabria<br><br>**OPPOSITION TO MOTION TO DISMISS**<br><br>Date:     June 18, 2015<br>Time:    10:00 a.m.<br>Courtroom: 4 – 17th Floor |

**TO DEFENDANTS, THE CLERK OF THE ABOVE-ENTITLED COURT, AND THE HONORABLE UNITED STATES DISTRICT JUDE VINCE CHHABRIA:**

Plaintiffs do hereby submit their Opposition to Motion to Dismiss filed by the Defendants.

---

# **TABLE OF CONTENTS**

I.   Introduction...........................................................................................................1

II.  Summary of Arguments.......................................................................................1

III. Legal Arguments....................................................................................................7

- Tender Not Required.....................................................................................9
- Dual Tracking............................................................................................10
- Fair Review...............................................................................................11
- Single Point of Contact..............................................................................11
- Failure to Verify Right to Foreclose..........................................................12
- RoboSigning..............................................................................................12
- Borrowers Right to Know...........................................................................13
- Violations of B & P Code 17200...............................................................13
- Promissory Estoppel...................................................................................14
- Violation of RESPA an TILA.....................................................................15
- Duty of Care..............................................................................................16
- Intentional Infliction of Emotional Distress..............................................17
- Breach of Oral Contract............................................................................17
- Breach of Covenant of Good Faith and Fair Dealing................................18
- Declaratory Relief and Injunctive Relief...................................................18
- Violation of Dodd-Frank Wall Street Reform Act.....................................18
- Libor...........................................................................................................18
- Leave to Amend.........................................................................................19

IV: Conclusion.............................................................................................................19

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*MedImmune* (549 U.S.)………………………………………………………..17

**United States Federal Cases**

*Adobe Sys. Inc. Privacy Litig.* No.: 13-CV-05226-LHK – F. Supp. 3d (N.D. Cal)………….……..17

*Alvarez v. Bac Home Loan* (2014) (Cal. App 4th)……………………………………15,17

*Ansanelli v. JP Morgan Chase Bank NA* (2011) (N.D. Cal)………………………………15

*Bingham v. Ocwen* (2014) (N.D. Cal.)……………………………………………...…..8

*Boessenecker v. JP Morgan Chase Bank* (2013) (N.D. Cal)………………………………14

*Caceres v. Bank of Am. N.A.* (2013) (C.D. Cal)………………………………………...14

*Canas v. CitiMortgage, Inc.* (2013) (C.D. Cal)………………………………………13

*Chabner v. United Omaha Life Ins.* (2000) 9th Cir.)……………………………………...12

*Cheung v. Wells Farog Bank N.A.* (2013) (N.D. Cal.)………………………………………9

*Cook, Perkiss and Liehe, Inc. v.Northern California Collection Serv. Inc.* (9th Cir.)…………..18

*Cooksley v. Select Portfolio Servs. Inc.* (2014) (E.D. Cal.)………………………………10

*Copeland v. Ocwen Loan Servcing LLC* (2004) (C.D. Cal)………………………………16

*Engles v. ReconTrust Co.* (2013) (C.D. Cal.)…………………………………...……9

*Gardenswartz v. SunTrust Mortg.,Inc.* (2015) (C.D. Cal.)……………………………10

*Guidi v. Paul Fin., LLC* (2014) (N.D. Cal)………………………………………15

*Hernandez v. Specialized Loan Servicing* (2014) CV-14-9404-GW-JEM…………………10

*Lopez v. Smith* (2000) (9th Cir.)……………………………………………...…..18

*Newsom v. Bank of Am. N.A.* (2014) (C.D. Cal)………………………………………16

*Roche v. Bank of Am. N.A.* (2013) (S.D. Cal)………………………………………15

*Rubio v. Capital One* (2010) (9th Cir.)………………………………………………13

*Trant v. Wells Fargo Bank* (2012) S.D. Cal)………………………………………15

*Schnieder v. Bank of Am N.A* (2014) (E.D. Cal.)………………………………...……..8

*Stokes v. CitiMortgage* (2014) (C.D. Cal.)………………………………………………9

-ii-

1    *Subramani v. Wells Fargo Bank N.A.* (2013) (N.D. Cal.)……………………………...……9

2    *Wickham v. Aurora Loan Servs* (2013) (S.D. Cal.)…………………………………...……8

3    **California Cases**

4    *Carma Developers v Marathon Development California Inc.* (1992) (Cal. 4th)………………16

5    *Olszewski v. Scripps Health* (2003) (Cal. App 4th)……………………………………13

6    *Siliga v. Mortg. Elec. Registration Sevc.* (2013) (Cal. App 4th)……………………………11

7    *Saunders v. Superior Court* (1994) (Cal. App 4th)…………………………………...…13

8    *Wilson v. Hynek* (2012) (Cal. App. 4th)…………………………………………13

9    **Federal Code**

10   Business & Professions Code 17200

11   12 U.S.C. Sec 2605(e)(1)(B)……………………………………………………14

12   **California Civil Code**

13   2923.4…………………………………………………………………………...1

14   2923.55(c)…………………………………………………………………………...6

15   2923.55…………………………………………………………………………...11

16   2923.5…………………………………………………………………………...12

17   2923.6…………………………………………………………………………11

18   2923.7…………………………………………………………………………10,11

19   2924(a)(6)…………………………………………………………………………...11

20   2924.9…………………………………………………………………………11

21   2924.10…………………………………………………………………………...11

22   2924.11…………………………………………………………………………...11

23   2924.12…………………………………………………………………………17

24   2924.12(a)(1)…………………………………………………………………………...11

25   2924.17…………………………………………………………………………...11

26   2924.17(c)…………………………………………………………………………...11

27   2924(a)(b)…………………………………………………………………………8

28   2937…………………………………………………………………………12

# I: INTRODUCTION:

Plaintiffs have filed a Motion to Strike the Motion to Dismiss already with the Court but in an abundance of caution submits their Opposition to the Motion to Dismiss. The Plaintiffs have filed both in State and Federal Court numerous filings due to the Defendants removal of this case to the Federal Courts. The Plaintiffs causes of actions, supporting law and case citations are included in those filings and it would be repetitive for this Court to have to re-read them again. The Plaintiffs hope that this Court reads all of the Plaintiffs filings to date. Therefore the Plaintiffs are responding to the claims and any case law not previously identified in support of this Opposition Response.

One of our Founding Fathers, Thomas Jefferson, wrote; "I believe that banking institutions are more dangerous to our liberties than standing armies." One only has to look at the Great Recession and the effect that the misconduct and outright fraud has had on the global economy. To combat the extensive global damage done by all elements involved in the lending business, including servicers, trustee, beneficiaries and other agents in regards to what was traditional home lending practices for scores of years, pre the slice-o-matic bundling and selling of Notes and Deeds of Trust, new laws such as the Homeowner's Bill or Rights (HBOR), the Dodd-Frank Wall Street Act, the Consumer Financial Protection Bureau rules (CFPB) and other new laws were enacted to start providing the much needed protection to Homeowners.

# II: SUMMARY OF ARGUMENT

The Plaintiffs are severely handicapped in making a reply to any motion brought forward by the Defendants. For over two years the Plaintiffs have asked for documentation that Plaintiffs are statutorily required to receive from the Defendants yet, much of this information has never been provided by the Defendants. Even the most simple requests from the Plaintiffs such as "**who owns the Plaintiffs loan**" has been responded to by the Defendants with 5 different answers, from 5 different representatives of the Defendants, naming 5 different entities including the Defendants, and, of course, none of them correct. The fact is that either Defendants do not know who owns the Plaintiffs loan or are concealing this information from the Plaintiffs. Without this information it questions the legal rights the Defendants have to foreclose on the Plaintiffs home as the chain of

-1-

selling, transferring or assignment of the Plaintiffs loan cannot be verified as of yet. The Plaintiffs do not dispute that someone owns the Plaintiffs loan. Nor do the Plaintiffs dispute that their loan can be sold, transferred or assigned, nor do the Plaintiffs dispute that the true owner of the Plaintiffs loan has the legal right to foreclose under certain conditions. Defendants rely on the argument that because a foreclosure sale has not taken place they have violated nothing. This is akin to saying "I robbed the bank but later on I gave the money back." The act of robbing the bank in the first place is the crime. The act of violating the laws of HBOR or any other laws are the Defendants crime regardless of a foreclosure sale not taking place yet. Now that a lawsuit has been filed, the Defendants might well be forced to submit information, something the Defendants fear for if proven as suspected by the Plaintiffs, it has always been the intent of the Defendants not to provide the Plaintiffs a fair chance of a loan modification, it was done for the sole purpose to foreclose so that Defendants could glean illegal fees and tens of thousands of dollars of highly inflated and illegal interest charges on a substantial loan before Plaintiffs could discover the misconduct perpetrated by the Defendants. The response to the claims made in the Defendants Summary of Arguments are as follows: (1) The parties, have not had any communications in regards to the substance of this Motion. Plaintiffs have communicated with counsel of the Defendants to the following extent that Plaintiffs have asked for information they are entitled to, with no response, Plaintiffs have asked to begin Settlement Discussion, but no response. (2) Plaintiff Bruce Portner is a real estate salesperson, not a Broker or real estate developer. (3) The loan was taken out by both Plaintiffs, not just Plaintiff Kimberly Portner. (4) The Loan is not serviced by SLS on behalf of Chevy Chase Bank. Chevy Chase Bank is no longer in existence as of 2009. (5) Tender is not required as claimed by Defendants. (6) The Defendants do not dispute the time line provided by the Plaintiffs. They do not dispute the dates, times and representatives of whom the Plaintiffs spoke to nor the content of those conversations with the Defendants. They do not dispute that Plaintiffs have spoken to over **FORTY** different Single Points of Contact representatives of the Defendants. Nor do they dispute that the Plaintiffs have submitted **three** Qualified Written Requests, **two** verbal loan modification applications and **four** written complete loan applications to the Defendants. (7) The Plaintiffs do not

-2-

1 dispute that the HBOR became effective January 1st, 2013. The Defendants violations of the HBOR
2 took place after the HBOR became law. The Defendants attempt to put together some strange
3 theory that because the Plaintiffs submitted their application about the same time the HBOR became
4 effective, this was done with some devious premeditation. The facts are that the Defendants offered
5 the loan modification to the Plaintiffs in late 2012 and the Plaintiffs responded. (8) The Defendants
6 claim the Plaintiffs only remedy to the Plaintiffs causes of action is a continuation of the foreclosure
7 sale that they have received many times. The "continuances" were only two. The Defendants wish
8 to couch the continuation on their own largesse but the facts do not support this. The first
9 continuance was based on the TRO enjoining the Defendants from the sale. The second was based
10 on the Defendants attempting to conduct a Trustee Sale while the TRO was in effect. After being
11 backed into the corner for this violation, Defendants "agreed" to continue the sale until after the
12 Preliminary Injunction hearing in this Court. (9) The claim that the Defendants do not have to
13 "prove up" their right to foreclose is mistaken by law. (10) The Defendants position that this is a
14 "preemptive claim" as being impermissible is also mistaken by law. (11) The Defendants contradict
15 themselves in their Motion to Dismiss in regards to the Plaintiffs loan. The Plaintiffs did not
16 refinance an existing loan. Plaintiffs secured a new loan on the property. (12) The basis of this case
17 is more than just the loan and the Deed of Trust. The basis of this case is a raft of violations of
18 numerous laws. (13) With the submission of certain documents included in the filing of the
19 Defendants, it is now discovered for the first time that fraudulent interest rates have and are being
20 applied to Plaintiffs loan as well as illegal fees being assessed by the Defendants. (14) The
21 Defendants contend that the contacts that post-date the HBOR effective date do not state sufficient
22 facts to support the claims made. This is best answered by looking at the Order from the Court in
23 the TRO hearing, of which the Plaintiffs were GRANTED the TRO. The Court states in its Order,
24 *"Plaintiffs exhaustively have documented their efforts to find out information, receive responses to*
25 *their loan modification request, and get other basic information to which they are statutorily*
26 *entitled". "Plaintiffs have documented in excruciating detail their efforts to which they have gone to*
27 *resolve their default status prior to filing suit to avoid their house being sold."* (15) The Plaintiffs

-3-

did not state that they would have difficulty making their payments to the Defendants. The Plaintiffs stated to the Defendants between the period of time between June through December 2012 when the Defendants increased their monthly mortgage payments from $7,792.32 to $8,759.80, a 11% increase in a time when the Plaintiffs index rate was dropping, that the Plaintiffs would have a difficult time paying this extra $967.48 monthly increase because of the tremendous slowdown in real estate sales due to the recession. (16) The Plaintiffs continually asked the Defendants if they could speak to the Lender to discuss this increase. The Plaintiffs either would not or could not identify to the Plaintiffs who the Lender was. (17) After the Plaintiffs continually asked the Defendants who their Lender was, in November 2012 the Defendants identified US Bank. (18) Plaintiffs attempted to speak with US Bank numerous times but was passed around and not responded to. As it turns out the Plaintiffs only recently discovered that US Bank is the Trustee on behalf of unidentified owners of the Plaintiffs loan. (19) In late November 2012 the Defendants offered the Plaintiffs a loan modification program to reduce their monthly mortgage payments. (20) Plaintiffs continued to make the increased payments of $8,759.80 through April of 2013. On Page 13, Line 25 of Defendants Motion to Dismiss the Defendants admit the Plaintiffs tendered those payments. (21) The Defendants admit that the Plaintiffs submitted two monthly payments of $8,759.80 each to cure the default for the months of October and November 2012 and $35,039.20 covering the mortgage payments of December 2013, January, February and March 2013. (22) Plaintiffs were **instructed** by the Defendants to submit these payments to prevent a default. (23) The Defendants either returned these payments or cashed them and then returned them **after** they filed their first Notice of Default in April of 2013. (24) The Defendants yet again contradict themselves in this Motion to Dismiss. They state that the Plaintiffs allege in "minute detail how they have been in contact with SLS". Minute detail indicates that Plaintiffs did not submit "thread-bare" allegations and would certainly be sufficient to state a basis for a claim. (25) The Defendants have a propensity to exaggerate as they claim the Plaintiffs have submitted its four complete loan modifications applications over the next three years. Perhaps the Defendants are functioning on the Mayan Calendar for the one that the Plaintiffs use shows the elapsed time between the first

-4-

submitted loan application until the fourth submitted loan application was approximately 18
months. (26) The Defendants have attempted to argue that the Plaintiffs submitted four loan
modification applications which is not allowed unless there is a change in the Plaintiffs financial
situation. As to the 4 loan modification applications, the Plaintiffs did not submit 4 *different*
applications, the Plaintiffs submitted the *same* application 4 different times as Defendants claimed
they did not receive them. (27) Defendants claim that the loan balance due on the loan is
$2,678,457.88 and yet on the May 1, 2015 SLS's mortgage statement it shows that the Defendants
balance is $2,498,500, which is $179,957.80 less than what Defendants now claim. Plaintiffs
contest the amount of $2,678,457.88 as Defendants applied illegal fees and overcharged Plaintiffs
as to the Interest Rate calculated on Plaintiffs loan. (28) The Defendants claim that because
Plaintiffs had numerous conversations with the Defendants amounts to the same thing as
Defendants having worked with the Plaintiffs to avoid foreclosure. This is of course a ridiculous
conclusion. (29) Defendants claim Plaintiff Bruce Portner is not a signatory of the loan but on Page
14, Line 1 of the Defendants Motion, the Defendants admit just that. "But the **contracts that the
Portners signed required them to make regular monthly payments..."** In furtherance that the
Defendants clearly know that Plaintiff Bruce Portner is a signatory on the loan Defendants on Page
20, Line 13-14 the Defendants state, "and the Portners, on the other hand, agreed that the Portners
would make monthly mortgage payments." The Defendants do not say Kimberly Portner but say the
Portners. How could Plaintiff Bruce Portner agree to make monthly payments on a loan that he was
not a signatory of. Realizing if the Defendants don't challenge that Plaintiff Bruce Portner is not a
signatory of the loan would mean that the Defendants violated the rights of the borrower Bruce
Portner by failing to adhere to the foreclosure requirements. To support their position the
Defendants have submitted a Declaration of Les Poppitt. Mr. Poppitt states in Exhibit B that the
Adjustable Rate Note is a true and correct certified copy. This is not a true, correct and certified
copy. Pages 2 and 5 are missing, portions of the document have been redacted, and it is not a
certified copy and does not have the Notary Stamp on this document from the Title Company. The
Defendants submit other documents in an attempt to support their position. The first is a 1 Year

-5-

1  Prepayment Penalty document. This is also not a true, correct or certified copy. There is also no

2  Notary Stamp on this document from the Tittle Company. The second document is a purported

3  Truth in Lending Disclosure Statement of which neither of the Plaintiffs signatures are on this

4  document and the loan number has been redacted. The Adjustable Rate Rider is signed by both

5  Plaintiffs. The Plaintiffs wish to point out to the Court the following language is contained in the

6  first paragraph of the Adjustable Rate Rider in which states in the pertinent parts:

7  • **"THIS ADJUSTABLE RATE RIDER is made the 24th day of April 2007 and is**

8  **incorporated into and shall be deemed to amend and supplement the Mortgage, Deed**

9  **of Trust or Security Deed, (the Security Instrument"....).**

10  The process of the Title Company after all documents are property signed and notarized is to send

11  them back to the Funder of the Lender for complete review **PRIOR** to the Lender funding the loan.

12  The Lender would have never funded the loan without the signature of Bruce Portner on the

13  Adjustable Rate Loan. Kimberly Portner at that time was a stay-at-home homemaker. She did not

14  work and could not in any way qualify for a loan for $2.2ml dollars by herself. If the Defendants

15  wish to continue to state that Bruce Portner is not a signatory of the loan, this than raises a raft of

16  new causes of actions against the Defendants by the Plaintiffs. (30) None of the above documents

17  should be allowed to receive Judicial Notice as they are not recorded in the Public Record, are not

18  authenticated and the truth of the documents is disputed. (31) Defendants include in their exhibits

19  the August 2, 2013 Notice of Default which is unsigned by the Defendants and include two

20  California Declaration of Compliance Civil Code Sec. 2923.55(c) both dated April 17, 2013 and

21  addressed only to Kimberly Portner. These documents relate to the NOD filed by the Defendants in

22  May of 2013. Defendants did not provide Plaintiffs a California Declaration of Compliance

23  document in the NOD filed in August of 2013. The April 17, 2013 documents certainly could not

24  be used in an event that took place some 5 months later. The failure to supply a new California

25  Declaration of Compliance violated Civil Code 2923.55(c). (31) The Defendants claim that because

26  they were able to speak to many single points of contacts this somehow translates into the

27  Defendants fulfilling their requirements under the HBOR laws. Defendants claim that even if this is

28  -6-

1   a technical violation the Plaintiffs are not harmed. The Plaintiffs losing their family home based on

2   a "technical" violation certainly constitutes irreparable harm. (32) The Defendants argue that the

3   Plaintiffs cannot demand for no good reason whatsoever that the Defendants prove up they are

4   entitled to foreclose on the Plaintiffs home. The Defendants completely ignore Cal. Civil. Code

5   2924(a)(6) and Cal. Civil Code 2924.17(c). Plaintiffs can find nowhere in the Civil Code in the

6   enactment of the HBOR the words that say that all the Defendants have to do is to just say "Trust

7   Me" to make it so. (33) The Plaintiffs are informed and believe that any perceived authority the

8   Defendants claim they have to enact a foreclosure process is based on an illegal assignment or

9   transfer of rights. (34) The Plaintiffs do not claim that someone does not have those rights,

10  however, only through Discovery can this determination be made with certainty. (35) Defendants

11  wish to argue that the Plaintiffs did not submit a "complete" loan modification application and it is

12  not subject to the Plaintiffs making that determination. However, the facts in this case are that the

13  Defendants never responded to any of the Plaintiffs four submitted applications. As such, the

14  Plaintiffs rightfully assumed that all of the Plaintiffs applications were complete and pending as

15  Defendants never asked for more information and/or any new information. The Defendants never

16  provided a **written determination** on anything to the Plaintiffs and by moving forward with a

17  Notice of Default and Notice of Sale the Defendants violated Cal. Civil Code 2924.11 which

18  requires a written determination on the Plaintiffs application. (36) Defendants put forward the

19  theory that the Plaintiffs are not allow to file a "pre-emptive" lawsuit. The HBOR does indeed allow

20  Plaintiffs to file an injunctive relief action to enjoin material violations of the HBOR. (37) The

21  Defendants now argue that because the Plaintiffs concede they spoke to Defendant SLS and

22  submitted applications to SLS that this somehow proves that the Defendant SLS is the legal servicer

23  of the Plaintiffs loan. Without SLS providing this proof, what is to prevent the potential real owner

24  of the loan from knocking on the Plaintiffs door in the future and say sorry you paid SLS, but they

25  are not the servicer and don't own the loan. (38) Defendants claim that Chevy Chase sold the loan

26  to US Bank. US Bank informed the Plaintiffs in April 2015 that they are only the Trustee for the

27  Loan on behalf of yet to be identified "investors" and they are not now or ever have been the owner

28                                                    -7-

1   of the Plaintiffs loan. (39) The HBOR and laws surrounding the Plaintiffs other causes of actions

2 are not based on a dollar amount claimed in arrearage contrary to the claims made by the

3 Defendants. (40) In the Declaration of Les Poppit identified as Exhibit F, is a copy of the payoff

4 statement for the Plaintiffs loan. In this pay off document it shows that the Interest Rate applied to

5 the Plaintiffs loan by the Defendants is 3.0000%. However, Notices of Interest Rate Adjustments

6 sent to Plaintiff Kimberly Portner that span from at least June 30th, 2014 valid through April 30th,

7 2015 clearly shows the interest rate being charged to the Plaintiffs is 2.8750%.(41) Defendants

8 submitted a letter dated June 20, 2014 in their exhibits from SLS to Plaintiff Kimberly Portner to

9 evidence some sort of silver bullet to support Defendants contentions that Plaintiffs did not submit a

10 complete application. Defendants are misguided in this belief. This document is nothing more than

11 yet another loan modification application, **not** a response to any of the previously submitted loan

12 modification applications. On May 9, 2014 Plaintiffs provided a 2nd verbal application as

13 Defendants claimed they needed a new one. In Plaintiffs time line Point 61 is a recap of this event.

14 This verbal loan application was taken by Mariam ID #11282 a Defendants "single point of contact"

15 albeit this time not in the Loan Modification department but the Customer Relations Department.

16 Plaintiffs pressed Mariam as to what the status was of the previous submitted 3 applications and

17 other submitted documents.  Mariam starts crying and says **"we are always (SLS) getting it**

18 **wrong."**  The June 20, 2014 document does not state anywhere something to the effect "we are in

19 receipt and reviewing your application but we need the following missing or new information to

20 complete our review".  The document does refer to a correspondence received by the Defendants

21 from the Plaintiffs on May 22, 2014 which is an email dated May 21, 2014 instructing Defendants

22 that since Plaintiffs have been told that all calls are recorded, to ensure that Defendants maintain

23 and preserve these call. Additionally, in Plaintiffs time line Point 74 is a call placed to Kathleen ID

24 # 11266, another single point of contact for the Defendants, on May 21, 2014 in which Plaintiffs are

25 questioning the status of the previously submitted loan applications.  To further evidence that this is

26 nothing more than another loan application, not a review of previous loan applications, the

27 document states "Core Documents Needed: Request for Mortgage Assistance Form (RMA).  A

28                                   -8-

1 RMA is a loan application which was attached to the June 20, 2014 letter. The Plaintiffs for the 4th

2 time filled out this RMA. But, as with the previous 3 other submitted loan applications, the

3 Defendants received no response from the Defendants. Plaintiffs sent to Defendants via email on

4 September 15, 2014 and November 11, 2014 asking for a response to Plaintiffs submitted 4th

5 application.

6 (42) Defendants and Plaintiffs **do not know who owns** Plaintiffs loan. Defendants have claimed

7 now over 5 different entities who own the loan, including Defendants SLS, which is of course false.

8 Cal. Civil Code 2924(a)(b) requires the Defendants to ensure that it has reviewed competent and

9 reliable evidence to substantiate their right to foreclose. The Defendants have provided no evidence

10 to that effect because they have not reviewed competent and reliable evidence. Through discovery

11 the true owners of the Plaintiffs loan will be ultimately uncovered and Plaintiffs reserve their right

12 to add them to this instant action if needed. (43) The Defendants claim that the Plaintiffs did not

13 even make the minimum monthly payment absent the unexplained significant jump in the monthly

14 payments. (44) What the Defendants do not identify to this Court is that any monthly payment that

15 was not the exact amount as claimed by the Defendants would be rejected by the Defendants and

16 not applied to the Plaintiffs loan.

17 **III: LEGAL ARGUMENTS**

18 **Tender Not Required**

19     In granting the TRO the Superior Court rejected the Defendants arguments of tender and for

20 good reason. **The HBOR imposes no tender requirements.** A growing number of Federal courts

21 have explicitly held that the tender rule only applies in cases seeking to set aside a completed sale,

22 rather than an action seeking to prevent a sale in the first place. The cases that the Defendants cite

23 all predate the implementation of the HBOR. A tender requirement would completely eviscerate the

24 remedial provisions of the HBOR statute. In *Schnieder v. Bank of Am. N.A.* 2014 WL 2118329 at

25 *13-14 (E.D. Cal. May 21, 2014) found no tender required pre-foreclosure. In *Bingham v. Ocwen

26 Loan Servicing LLC* 2014 WL 14-4005 at *6-7 (N.D. Cal. Apr. 16, 2014) the court found a holding

27 that a plaintiff may seek injunctive relief under HBOR "regardless of tender." The court in

28                                                     -9-

1   *Wickman v. Aurora Loan Servs. LLC* 2013 WL 4517247 at *3 (S.D. Cal. Aug. 23, 2013) declined a
2   tender requirement where borrower brought action after a Notice of Trustee Sale was recorded, but
3   before actual sale. In *Engles v. ReconTrust Co.* 2013 WL 6815013 at *7 (C.D. Cal. Dec. 20, 2013)
4   the court stated tender not required where borrower's lack of authority to foreclose claim, if true,
5   would render the sale void, not voidable. See also *Subramani v. Wells Fargo Bank, N.A.* WL
6   5913789 at *4 (N.D. Cal. Oct. 31, 2013) and *Cheung v. Wells Fargo Bank N.A.* 2013 WL 6017497
7   at *4-5 (N.D. Cal. Sept. 25, 2013) In *Stokes v. CitiMortgage* 2014 WL 4359193 at *9 (C.D. Cal.
8   Sept. 3, 2014) the court refused to require tender at the pleading stage because it is unknown
9   whether requiring tender based on HBOR causes of action is inequitable without more facts.

10                                     **Dual Tracking**
11      In the Plaintiffs Reply Brief on its Motion for Preliminary Injunction, it was identified that the
12  Defendants were conducting a Trustee Sale on May 14, 2015 and Plaintiffs only received notice of
13  this sale on the same day. Apparently this sale did not take place as on May 26, 2015 the Plaintiffs
14  received a new notice from Defendants legal counsel, Buckley Madole in the mail late in the
15  afternoon after the Plaintiffs had already filed their Reply Brief. Now this new Notice of Trustee
16  Sale received by the Plaintiffs by the Defendants legal counsel of Buckley Madole identifying that
17  the Trustee Sale on May 14, 2015 was postponed but will now take place on June 9, 2015, although
18  the hearing date on the Preliminary Injunction is June 18, 2015. Lower courts have ruled and has
19  been cited in Plaintiffs previous filings that sending out Notices of Sale while a TRO is in effect
20  amounts to Dual Tracking. But of equal, if not more important, is this continual noticing of the
21  Trustee Sale to the Plaintiffs when the Defendants counsel knows full well of the hearing dates and
22  still sends out these notices. This can only be interrupted as piling on severe emotional distress and
23  harassing of the Plaintiffs. The Defendants are on full notice of the mental and health issues this
24  process has already taken on the Plaintiffs and this conduct cannot be excused. The only
25  explanation is that the Defendants hope the Plaintiffs will give up this case before it goes any
26  farther.
27
28                                          -10-

1 | <center>**Fair Review**</center>

2 | The Plaintiffs have never been evaluated for a loan modification or have ever been given a fair

3 | review. Plaintiffs do not allege that Defendants had the obligation to issue them a loan

4 | modification. Plaintiffs are aware of the fact that a servicer is not obligated to issue a loan

5 | modification, however, when a servicer offers a borrower the opportunity to apply for a loan

6 | modification, the review should be done in good faith, diligently and timely. It is doubtful Plaintiffs

7 | application was ever truly reviewed on its merits. Courts have found viable claims in this type of

8 | situation. In *Cooksley v. Select Portfolio Servs., Inc.* 2014 WL 2120026 at *2 (E.D. Cal. May 21,

9 | 2015) (finding it "unlikely" servicer evaluated borrower's previous applications, or that

10 | borrower was ever "afforded a fair opportunity to be evaluated").

11 | <center>**Violation of the Single Point of Contact**</center>

12 | A Single Point of Contact claim is both an HBOR and RESPA requirement by virtue of the

13 | recently enacted CFPB loan servicing rules. The Plaintiffs have never alleged that they are only

14 | entitled to speak to one Single Point of Contact (SPOC). Plaintiffs have always understood that the

15 | law allows a "team". But a "team" is not over 40 SPOC, none who had the knowledge and authority

16 | to execute the duties of a SPOC. The Plaintiffs have already provided many cases which defeat the

17 | Defendants claim in regards to the SPOC law. These are found in both the State and Federal filings

18 | in the Plaintiffs Points and Authorities to the various motions. To supplement those case citations

19 | that Plaintiffs also add the following. The Defendants claim that because the Plaintiffs were able to

20 | talk to a number of people at SLS this satisfied Cal. Civil Code Sec. 2923.7. "In *Hernandez v.*

21 | *Specialized Loan Servicing, LLC* CV-14-9404-GW-JEM the Court denied Defendant's SLS Motion

22 | to Dismiss. Defendant SLS proffered the same failed claim. In *Gardenswartz v. SunTrust Morgt.,*

23 | *Inc.* No. 14-CV-8947, 2015 U.S. Dist. LEXIS 28655 at *18-19 (C.D. Cal. Mar 3, 2015) the court

24 | concluded: "Because Plaintiffs allege that the various SunTrust representatives assigned to their

25 | application made multiple errors due to their lack of organization and familiarity with the

26 | application, the Court finds that Plaintiffs have sufficiently alleged that the SunTrust personnel

27 | handling the application lacked the knowledge and authority to constitute a team of personnel as

<center>-11-</center>

1  contemplated by Sec. 2923.7 dismissal of Plaintiffs Sec. 2923.7 claim is not warranted on this
2  basis."

<center>**Failure to Verify Right to Foreclose**</center>

4          An actual controversy exists between the Plaintiffs and the Defendants as to the authority and
5  rights that the Defendants claim they have in order for the Defendants to enact a foreclosure on
6  Plaintiffs home.  California Civil Code 2924.12(a)(1) states, "If a trustee's deed upon sale has not
7  been recorded, a borrow may bring an action for injunctive relief to enjoin a material violation of
8  Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17."  The Defendants rely on
9  *Siliga v. Mortg. Elec. Registration Sys., Inc.* 2013 Cal. App. 4th 75 (2013) however in Siliga, the
10  court's position was that a borrower may not bring the foreclosing entities to court to require them
11  to prove anything ***outside*** of what is already required by statute. In the Plaintiffs instant case the
12  violations of the Defendants of existing statute includes the HBOR which creates a valid cause of
13  action. California Civil Code 2924(a)(6) states, "No entity shall record or cause a notice of default
14  to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial
15  interest under the mortgage or deed of trust, the original trustee or the substitute trustee under the
16  deed of trust, or the designated agent of the older of the beneficial interest. No agent of the holder of
17  the beneficial interests under the deed of trust may record a notice of default or otherwise
18  commence the foreclosure process except when acting within the scope of authority designated by
19  the holder of the beneficial interest." California Civil Code 2924.17(c) states, "Before recording or
20  filing any of the documents described in subdivision (a) a mortgage servicer shall ensure that it has
21  reviewed competent and reliable evidence to substantiate the borrower's default and the right to
22  foreclose, including the borrower's loan status and loan information."  It is not the obligation or
23  responsibility of the Plaintiffs to investigate and ferret out competent and reliable evidence.
24  Required under California Civil Code 2924.17(c) is that the Defendants must ensure that it has
25  reviewed competent and reliable evidence and the violations of the HBOR and other laws by the
26  Defendants are not outside the statutory framework.

<center>**Robo-Signing**</center>

28  <center>-12-</center>

1  The Defendants argue that robo-signing does not matter. The Legislature obviously doesn't

2  agree and that is why they enacted California Civil Code 2923.5 which provides that recording

3  "robodocs" is prohibited on all mortgage related notices of default and supporting declarations,

4  notices of sale assignment of deed of trust, and substitutions of trustees recorded in connection with

5  a non-judicial foreclosure, as well as declarations filed in court with respect to any foreclosure

6  proceeding. Documents must be accurate, complete and supported by competent evidence.  The

7  Plaintiffs are informed and believe that many of the documents effecting the transfer, assignment

8  and sale of the Plaintiffs loan have been robo-signed.  Defendants have provided no competent

9  evidence to support that all of these documents are accurate.

10  **Borrowers Right to Know**

11  The Plaintiffs have never received all of the written notification when a person/entity who has

12  been holding the promissory note, bond, or other instrument transfers servicing of the indebtedness

13  secured by a mortgage deed of trust on Plaintiffs property.  This is mandated by Cal. Civil Code

14  2937.  Plaintiffs are informed and believed that this has happened at least 3 times as to Plaintiffs

15  loan.  TILA requires that whenever ownership of a mortgage loan securing a consumer's principal

16  dwelling is transferred, the creditor that is the new owner or assignee must notify the borrow in

17  writing, within 30 days after the loan is sold or assigned, of all of the following information: (1) the

18  new creditor's name, address and telephone number (2) the date of transfer (3) location where the

19  transfer of ownership is recorded (4) the name, address, and telephone number for the agent or other

20  party having authority to receive a rescission notice and resolve issues concerning loan payments

21  and (5) other relevant information regarding the new owner.  The Plaintiffs loan has been sold,

22  transferred and/or assigned many times without this information supplied to the Plaintiffs and the

23  Defendants had a duty to provide this information.

24  **Violations of the Business and Professions Code 17200**

25  The Business and Professions Code 17200 incorporates other laws and treats violation of these

26  law as unlawful business practices, independently actionable under state laws. *Chabner v. United*

27  *Omaha Life Ins. Co.* 225 F. 3d 1042, 1048 (9th Cir. 2000) "A claim made under section 17200 is not

28  -13-

confined to anticompetitive business practices, but it is also direct toward the public's right to protection from fraud, deceit and unlawful conduct [Citation.] Thus, California courts have consistently interpreted the language of section 17200 broadly." [Citations.]" *Wilson v.* Hynek (2012) Cal. Apo. 4th 999, 1007.Violation of almost any federal, state, or local law may serve as a UCL claim. *Saunders v. Superior Court,* 27 Cal. App 4th 832,838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." *Olszewski v. Scripps Health,* 30 Cal. 4th 798, 827 (2003). To have standing a Plaintiff must sufficiently allege that (1) he has lost money or property sufficient to constitute an injury in fact under Article III of the Constitution and (2) there is a "casual connection" between the defendant's alleged UCL violation and plaintiffs injury in fact. *Rubio v. Capital One Bank,* 613 F. 3d 1195, 1203-04 (9th Cir. 2010) (citations omitted). In *Canas v. CitiMortgage, Inc.* 2013 WL 335387 (C.D. Cal. July 2, 2013) the court found for "fraudulent claim," a plaintiff need only show that the "members of the public are likely to be deceived" by defendant's conduct. This is a lower standard then common law fraud claims." Because of the Defendants actions, Plaintiffs credit scores have dropped 150 points preventing them to obtain a refinance of the Plaintiffs home to take advantage of the low fixed interest rates. As well, this significant drop in the Plaintiffs credit scores also have effected Plaintiffs credit access as Plaintiffs have had their existing credit card limits slashed in half or outright cancelled. Because of the Defendants advertising the Plaintiffs home, a home they did not own, on the World Wide Web at a fire sale price, the Plaintiffs have received unsolicited calls from Buyers looking to purchase the Plaintiffs home for a minimum of $1,000,000 under its current present value based on the low ball price the Defendants have advertised the Plaintiffs house for sale at. And now with the discovery of the Libor Fraud, Plaintiffs appear to have subjected to tens of thousands of dollars of illegal interest charges.

### Promissory Estoppel

The Plaintiffs have plead in their filings clear and unambiguous promises made by Defendants, specifically that no foreclosure proceeding would take place and that Plaintiffs loan what be current by following the specific promises of the Defendants. The Plaintiffs identified who made these

-14-

1  promises, on what date these promises were made and what these promises were. The Plaintiffs
2  relied on these promises and as such the Plaintiffs actioned there part of the promises as identified
3  in the already submitted evidence in this case provided by the Plaintiffs. The Defendants did not
4  fulfill their promises. By not fulfilling the promises made by the Defendants the Plaintiffs incurred
5  late fees and continued to have their credit damaged which effected Plaintiffs ability to secure a
6  refinance of the Plaintiffs loan at a lower fixed term rate. In *Caceres v. Bank of Am. N.A.* 2013 WL
7  7098635 (C.D. Cal. Oct. 28, 2013) the court found that the borrowers identified a specific servicer
8  representative who made the promises and relied on servicer's assurances. Because servicer held
9  borrower's loan and controlled the foreclosure process, borrowers reliance was reasonable and
10 foreseeable.

11                         **Violation of RESPA and TILA**

12      RESPA provides plaintiffs with a private right of action for, among other wrongful acts, a loan
13 servicer's failure to respond to a Qualified Written Request (QWR). 12 U.S.C. Sec. 2605(e) (1)(B).
14 To validly claim a RESPA violation related to a QWR, a borrower must demonstrate that they
15 solicited information regarding loan servicing, not foreclosure. In the Plaintiffs three different
16 QWR's the Plaintiffs did not reference foreclosure. 12 U.S.C. Sec. 2605(e)(1)(B) defines a QWR as
17 " written correspondence...that---...(ii) includes a statement of the reasons for the belief of the
18 borrower, to the extent applicable, that the account is in error or provides sufficient detail to the
19 servicer regarding other information sought by the borrower." Plaintiffs three QWR met that
20 criteria. The Defendants did not respond accurately and fully to the three QWR's, in which none of
21 the request were over burdensome or over reaching. The Plaintiffs would have known among other
22 things who their actual lender was and been able to speak to them directly in an attempt to refinance
23 Plaintiffs loan at a lower interest fix rate loan and/or correct any problems to prevent the Plaintiffs
24 credit from being extremely damaged so as to refinance through its lender or another lender to
25 achieve the above. During the periods of time in which the Plaintiffs waited for responses to their
26 QWR, the Defendants continue to report delinquencies to the credit reporting bureaus thus
27 damaging the Plaintiffs credit. In *Boessenecker v. JP Morgan Chase Bank* 2013 WL 3856242 (N.D.
28                                      -15-

Cal. July 24 2013) the court took the position that the failure of their servicer to respond to the QWR, (or respond adequately) led to monetary damages as the servicer prevented them from taking advantage of extremely low interest rates to refinance their mortgage. This showing was sufficient for both borrower's RESPA claim and provided standing for their UCL claim. In *Guidi v. Paul Fin., LLC* 2014 WL 60253 (N.D. Cal. Jan. 7, 2014) the court found servicers were not permitted to report delinquency-related information to credit reporting agencies for 60 post-receipt of the QWR. Violations of these RESPA provisions rendered a servicer liable for damages directly caused by the violations.

### Duty of Care

A Duty of Care exists if it goes beyond normal lender-borrower relationship. In *Trant v. Wells Fargo Bank. N.A.* 2012 WL 2871642 *19 (S.D. Cal. 2012), the court concluded a lender exceeds it rule as a money lender in connection with the handling of loan modification requests and is thus subject to a standard of reasonable care. In *Roche v. Bank of Am., N.A.* 2013 WL 3450016 (S.D. Cal. July 9, 2013) in which the court takes the position that a servicer may create this duty by: 1) offering to modify borrower's account, 2) charging unauthorized interest, or by 3) reporting incorrect, negative information to credit reporting agencies. In *Alvarez v. Bac Home Loan Servicing, L.P.* 228 Cal. App. 4th 941 (2014) the court held that loan servicing companies and banks owe borrowers a duty of care in servicing their loans.

### Negligent Misrepresentation, Intentional Misrepresentation and Fraudulent Concealment

Plaintiffs were prejudiced by Defendants actions and conduct. Plaintiffs have gone into great detail to identify who, what, when, where and how the Defendants acted to negligently misrepresent, fraudulently conceal and intentionally misrepresent known facts or facts that should have been known given the Defendants special knowledge of the Plaintiffs loan, details of the loan, application or lack thereof of payments, real interest rates, illegal fees and charges assessed to the Plaintiff. The authority of the speakers is alleged to be their employment by the Defendants. The Defendants made misrepresentations to the Plaintiffs that were contradictory and misleading. In *Ansanelli v.JP Morgan Chase Bank N.A.* 2011 WL 1134451 (N.D. Cal March 28, 2011) the court

-16-

found the above factors to deny the defendants Motion to Dismiss. If the servicer misleads the borrower during the loan modification process, the borrower may state a fraud or misrepresentation claims against the servicer, and possibly the servicer representatives. In *Newsom v. Bank of Am. N.A.* 2014 WL 2180278 at *5-7 (C.D. Cal. May 22, 2014) finding a valid fraud claim based on servicer's promise the borrowers would not go through foreclosure if they engaged in the modification process. In *Copeland v. Ocwen Loan Servicing, LLC* 2004 WL 304976 at *5-6 (C.D. Cal. Jan. 3, 2014) the court held that the allowance of a borrower to impose fraud liability on a SPOC.

### Intentional Infliction of Emotional Distress

While the act of foreclosure is indeed stressful and may not reach the bar inasmuch by itself, under this cause of action, the conduct of the Defendants have gone way beyond just that. The Defendants have consistently acted in bad faith and knowingly perpetrated acts that are extreme and outrageous with the intention of causing, or reckless disregard of the probability of causing emotional distress.

### Breach of Oral Contract

Contracts require mutual consent, definite terms, and consideration. All of these elements are present in Plaintiffs cause of action plead in their Breach of Oral Contract claim. The Plaintiffs were told to submit certain payments, which Plaintiffs did. The amounts told by the Defendants were exact amounts and the Plaintiffs confirmed them more than once with the Defendants. In exchange the Defendants agree to apply them to Plaintiffs loan and bring the loan current. The Defendants did not do so, returned the payments, cashed some of the payments and then returned them and then filed a Notice of Default prior to the return of all payments.

### Breach of Covenant of Good Faith and Fair Dealing

There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract. "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power of affecting the rights of another. Such power must be exercised in good faith". *Carma Developers*

-17-

1 │ *Inc. v. Marathon Development California, Inc.* (1992) 2 Cal. 4th 342, 372). Replete within the

2 │ causes of actions brought forth by the Plaintiffs the Defendants have time and time breached their

3 │ covenant of good faith and fair dealings.

4 │ <center>**Declaratory Relief and Injunctive Relief**</center>

5 │ In *Adobe Sys., Inc. Privacy Litig.* No.: 13-CV-05226-LHK –F. Supp. 3d, 2014 WL 4379916

6 │ (N.D Cal. Sept. 4, 2014) (quoting *MedImmune*, 549 U.S. at 127). "The central question, however, is

7 │ whether 'the facts alleged, under all the circumstances, show that there is a substantial controversy,

8 │ between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

9 │ issuance of a declaratory judgement.'" In *Alvarez v BAC Home Loan Servicing, L.P.* (2014) Cal.

10 │ App. 4th, 91 the Court points to the Cal. Civil Code 2924.12 which provides that "To enforce the

11 │ new requirements, the HBOR creates a private right of action allowing a borrower to seek

12 │ injunctive relief to enjoin a material violation of the act prior to foreclosure and to assert a claim for

13 │ damages for a violation of the act following foreclosure."

14 │ <center>**Violation of Dodd-Frank Wall Street Reform Act**</center>

15 │ Congress passed the Dodd-Frank Wall Street Reform & Consumer Protection Act which became

16 │ effective in January of 2014. Under these new Federal Rules, 1) servicers **must** store borrower

17 │ information in a way that allows it to be easily accessible and 2) servicers must have policies and

18 │ procedures in place to ensure that they can provide timely and accurate information to the

19 │ borrowers, investors and in any foreclosure proceeding to the Courts. It should be abundantly clear

20 │ through the Plaintiffs undisputed time line that the Defendants violated each of the above rules.

21 │ Through discovery the Defendants will either prove or disprove they had policies and procedures in

22 │ place to satisfy rule 2 above.

23 │ <center>**Libor**</center>

24 │ The Plaintiffs did not include in their original Complaint the issue of the London Interbank

25 │ Offered Rate, (LIBOR) scheme, as at that point the charges in this scheme were just allegations.

26 │ However, on May 20, 2015 the Banks plead "guilty" to the charges. Between 2007 and 2013 the

27 │ banks rigged the interest rates to generate more money for themselves off the backs of the

28 │ <center>-18-</center>

1 consumers. As with the Plaintiffs loan, millions of homeowners around the world have their loans

2 directly tied to the false LIBOR interest rate. The Plaintiffs are informed and believe that they have

3 paid tens of thousands of dollars more to the Defendants on their loan then what was legally owed

4 and now the Defendants in their pay off demand are requiring tens of thousands of dollars of more

5 illegal interest being charged to the Plaintiffs. This now raises more causes of action including

6 denying Plaintiffs due process, illegally taking of property and a bad instrument.

### Leave to Amend

8    Plaintiffs are confident that the causes of action against the Defendants are viable and meet the

9 standards to defeat a Motion to Dismiss. Should this Court determine that any or all of the Plaintiffs

10 causes do not meet this standard then this Court should allow Plaintiffs leave to amend its

11 Complaint. If the Court dismisses the complaint, it should grant leave to amend even if no request to

12 amend is made "unless it determines that the pleading could not possibly be cured by the allegation

13 of other facts." *Lopez v. Smith* 203 F. 3d. 1122 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe,*

14 *Inc. v. Northern California Collection Serv. Inc.* 911 F. 2d. 242,247 (9th Cir. 1990).

15 **IV: CONCLUSION**

16    The Plaintiffs have provided significant Code and Case Law to support Plaintiffs causes of

17 action. The Plaintiffs have demonstrated cognizable legal theory and more than sufficient facts to

18 support these cognizable legal theories. As such the Defendants Motion to Dismiss should be

19 denied. Plaintiff wish to point out to the Court that Defendant US Bank is not a part of the

20 Defendants Motion to Dismiss.

21 DATE: May 28, 2015                                      Respectfully submitted,

22

23                                                                                   /s/

24                                                         Bruce Portner in Pro Se

25                                                                         /s/
                                                         Kimberly Portner in Pro Se

26

27

28                                             -19-

CASE NO: 15-cv-01736-VC

I reside in the County of Marin, State of California. I am over the age of 18. My residence address is 2122 Centro East Tiburon, California 94920.

I, the undersigned, hereby certify that on May 28ᵀᴴ, 2015, I served the foregoing documents described as:

**Opposition to Motion to Dismiss**

on the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

> **Buckley Madole P.C.**
>
> **301 E. Ocean Blvd. Suite 1720**
>
> **Long Beach, Ca. 90802**
>
> **U.S. Bank**
>
> **800 Nicolett Mall**
>
> **BC-MN-H21N**
>
> **Minneapolis, MN 55402**

BY U.S. MAIL:     I enclosed the documents in a sealed envelope, addressed to the above name person at the address exhibited therewith, and deposited this envelope with the United States Post Service with postage fully prepaid.

Executed on May 28ᵀᴴ, 2015 at Tiburon, California 94920

I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

Bruce Portner