BRUCE S. PORTNER
KIMBERLY L. PORTNER
2122 Centro East
Tiburon, California 94920
Tel: 415-519-3503
Email: lportner@aol.com

PLAINTIFFS IN PRO SE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE S. PORTNER<br>KIMBERLY L. PORTNER<br><br>Plaintiff(s),<br><br>vs.<br><br>SPECIALIZED LOAN SERVICING, LLC, NBS DEFAULT SERVICE LLC, US BANK NA<br><br>And Does 1-100<br>Defendant(s) | Case No.: 3:15-cv-01736-VC<br><br>Hon. Vince Chhabria<br><br>**SUPPLMENTAL RESPONSE TO PLAINTIFFS OPPOSITION TO MOTION TO DISMISS**<br><br>Date: June 18, 2015<br>Time: 10:00 a.m.<br>Courtroom: 4 – 17th Floor |

## I: INTRODUCTION

In the last several days Plaintiffs have been provided previously unknown information and documents that the Plaintiffs submit in this Supplemental Response to Defendants Motion to Dismiss. Plaintiffs have informed Defendants of their intent to file this Supplemental Response.

## II: BACKGROUND

Defendant NBS Default Services (NBS) files and monitors all of the foreclosure activities for Defendant Specialized Loan Servicing (SLS). Defendant NBS is owned by Buckley Madole P.C., the legal representatives for both Defendants NBS and SLS but not for Defendants US Bank NA in this case. Buckley Madole P.C. started out as Brice, Vander Linder & Wernick P.C. in 1999. The name was changed to Buckley Madole P.C. on March 1, 2013. Lawrence Buckley and Luke Madole, owners of Buckley Madole P.C., are the Managing Members of and shareholders in NBS.

-1-

While NBS and Buckley Madole P.C. have separately filed business identities, in day to day practice they are inseparable in every other aspect. The importance of this information is to demonstrate that NBS and Buckley Madole P.C. are alter egos of each other. Neither take actions that are independent of each other and for all intents and purpose that while based on corporate and tax laws they may be set up independently of each other, in practice there is not a true attorney/client separation as NBS takes direct orders from Buckley Madole P.C.

**III: MEMORANDUM OF POINTS AND AUTHORITIES**

The Plaintiffs make this Supplemental Response to Defendants Motion to Dismiss based on the just received information as it is germane to some of the causes of actions put forth by the Plaintiffs. The patterns and practices of the Defendants over the course of a decade, inclusive of the time periods relevant to the Plaintiffs case, demonstrates the willful intent of the Defendants to disregard the laws afforded to the Plaintiffs in regards to foreclosure and other causes of actions claimed by the Plaintiffs. Plaintiffs will show the Defendants inability, through its own fault and choice, did not comply with the requirements of the California Homeowners Bill of Rights, RESPA, TILA, Dodd-Frank Reform Act and other pertinent laws. The Plaintiffs will demonstrate through Federal Court findings and orders, conclusions by the Office of the United States Trustee, a Government agency audit as well as a former employee's declaration, (additional Defendants past and current employees will support the Plaintiffs position upon further declarations and depositions), that Defendants have consistently engaged in filing false declarations, lost loan modification applications, lost borrowers responses to loan modifications documents requested from the Defendants, filing of false Proof of Claims in the Bankruptcy Courts, Notary Fruad and engaged in the now banned practice of robo-signing.

### Defendants Lack of Operating Procedures and Oversight

The Defendants do not have the needed operating procedures to train their employees to act in full compliance as required by law and remain compliant. Defendants employees have little oversight to ensure compliance of the above. Defendants have virtually no controls in place to ensure accuracy of documents in foreclosure procedures and loan modification procedures.

-2-

Plaintiffs are informed and believe that Defendants engaged in activities with its employees encouraging them to ignore consumer and bankruptcy laws inclusive of, but not limited to, filing false documents, filing false declarations and providing a run around to the borrower to move their property through the foreclosure process in exchange for promises made by the Defendants of Bonuses and Promotions within the company. The owners of NBS, licensed attorneys, exerted little supervisions over their attorneys, paralegals and administrative staff. As such, the Defendants xxxx

**The PaperVision System**

In the Declaration of Damion Hurst, **Exhibit 1**, up until at least 2014 Defendants relied on a system called Papervision which was inadequate and antiquated to properly handle loan and foreclosure documents as well as loan modification applications. The PaperVision system consistently lost or misfiled documents which lead to multiple requests for new loan modification applications. After 90 days the file grows "stale" which can result in years of trying to get a loan modification.

Defendants were fully aware of the problems with the PaperVision system but the Defendants apparently made a decision not to upgrade or replace the system based on an analysis of costs versus benefits to the Defendants bottom line. Documents and loan modification applications were lost and not recorded into the system.

**Growth and Speed vs. Accuracy and Compliance**

Defendants adopted a business model of "Growth and Speed vs. Accuracy and Compliance". The employees of the Defendants have consistently had little to no training in the handling of loan modifications, foreclosure requirements, verification as to the accuracy of loan documents, transfers and assignments of documents. As well, they received little to no training as to the requirements and compliance under the California Homeowners Bill of Rights (HBOR), other States laws who have recently enacted their own Homeowners Bill of Rights, the Dodd-Frank Act, the Consumer Financial Protection Bureau rules, RESPA and the Truth in Lending Act to name just some of these laws. Additionally, Defendants employees were told to identify themselves to borrowers as Single Point of Contacts without these employees having the knowledge

-3-

and authority to execute the duties of a Single Point of Contact.

**The Voracity of the Defendants**

The voracity of any document and numerous claims and statements made by the Defendants must be called into question as to its voracity. Defendants have been identified in a 2013 government agency audit to have practiced Robo-Signing and Notary Fraud. On numerous occasions the Defendants have been redressed by United States Federal Bankruptcy Courts, coast to coast, for filling false Proof of Claims and false Declarations by their own licensed attorneys. Defendants have been found by the Courts to not have adequate internal controls, no supervision and the lack of training of the Defendants employees. Even after the Defendants had assured the Courts that proper controls, supervision and oversight would be implemented by the Defendants, they continued to just provide lip service to the Courts.

**Findings of the Courts and the United States Trustee Office Say**

As early as 2001 Defendant NBS began their practices of violating consumer laws and bankruptcy laws by "pre-signing" verification pages to subsequently-prepared affidavits and when discovered they were sued by their client Matrix Financial Services Corp. for the acts perpetrated on Matrix and the Bankruptcy Court. *In re Ortega*, Case No. 01-90032-A-13 (Bankr. E.D. Cal.), the Court entered an order on March 3, 2003 which states:

- *"The court notes that the declaration of Matrix is suspect as evidenced where the factual paragraphs and on page 3, line 8, but Matrix signature appears accompanied by a different typeface on an un-numbered attach page. The court wonders whether Matrix signs signature pages in bulk and gives them to Matrix's counsel to date and attach to motions as counsel deems necessary. This court will give little or no evidentiary weight to declarations prepared in this fashion."*

A second court critizied the defendant NBS for almost the identical set of facts. *In re Hoffman,* Case No. 02-345025-C-7 (Bankr. E.D. Cal.). On March 28, 2003 the judge stated:

- *"And I'll tell you what concerns me is it looks to me like the declarations in support of the motion are being signed by the declarant before the relevant information is being filled."*

In the United States Bankruptcy Court Southern District of New York Case No. 10-10494 (SHL), in the Memorandum and Order from this Court filed on December 19, 2011 in a case where the Defendant NBS's principal and an owner of the law firm Buckley Madole P.C., Lawrence

-4-

**SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS**

Buckley, an attorney, and his firm Brice, Vander, Linden & Wernick, P.C. were brought before the court for misrepresentation of Proof of Claims. The Court found the following:

- *"Indeed, serious issues of public policy are raised by the practices at issue here. The country is in the midst of a foreclosure crisis, and the news is replete with examples of misleading, inaccurate or incomplete mortgage related pleadings that have been filed in both federal and state courts."*

- *"The Court finds that the practice of Buckley, and the Brice Firm, of submitting proof of claim without review by the signing attorney is a clear violation of Bankruptcy Rule 9011, the bankruptcy equivalent of Rule 11 of the Federal Rule of Civil Procedure."*

- *"Buckley testified that in addition to practicing law with the Brice Firm and being employed by AHMSI, he was also a part-owner and vice president of NBS…"*

- *"The attorney in question did not review the document and <u>had no intention of doing so prior to the filing</u>."*

- *"Indeed, practices like those of Buckley and the Brice Firm have garnered criticisms from the courts."*

- *"The Court assumes that respondents are taking any other steps necessary in this Court and in other jurisdictions' so as to be in compliance with Rule 9011 going forward and to remedy any past deficiencies."*

- *"The Court is disturbed by respondents' suggestions that, despite these changes, their original filing procedures were adequate".*

- *"The Court's refusal to impose sanctions is a direct result of Rule 9011's safe harbor provisions and <u>not in any way an approval of the patently unacceptable conduct that is the subject of this decision.</u>"*

After the redress by the above court based on the court's findings and order, one would think that Defendant NBS and Buckley Madole P.C. would adopt a different way to do business. But not so. Going forward, Defendant SLS participates in the deceit which is how the Defendants and Buckley Madole P.C. consciously elect to operate their business. A new court 3,000 miles from the New York court and now 2 years later after promises given to the Federal Bankruptcy Court in New York to correct its conduct, the Defendants and Buckley Madole P.C. get caught yet again with their hands in the cookie jar.

In the United States Bankruptcy Court Eastern District of California in Case No: 13-27835-E-13, based on a filing made by the Debtor the Court discovered a false Proof of Claim made by Defendant SLS and a false declaration made under penalty of perjury by an attorney of Buckley

-5-

**SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS**

Madole P.C., John Lackey, identifying himself as an authorized agent on behalf of the "creditor" SLS, of which SLS was not the creditor.  With the Court's antenna now raised, the Court issued an Order to Appear and a Order to Show Cause to find out what was taking place. The court first ordered responses from the parties and held a hearing on September 24, 2013.  In this hearing the Court stated:

- *"Filing pleadings is not an opportunity to make conflicting statements of fact and then the party choose the one which is most convenient or advantageous."*

The Court issued its findings on January 14, 2014 as follows:

- *"Though Mr. Lackey states under penalty of perjury that SLS is the "creditor," the attachments to the Proof of Claim belie that statement."*

- *"The court is concerned that after these Debtors completed the Plan, made all payments required thereunder for the secured claim as determined pursuant to 11 U.S.C. Sec. 506(a)…SLS would have a nasty surprise for the Debtors."*

- *"SLS was merely loan servicer, was never the creditor, and is not the agent for U.S. Bank, National Association, Trustee…"*

- *"On the one hand, this might be an aberration where Mr. Lackey was distracted and made a simple human error, or one in which SLS has failed to provide employees or agents with the proper education for filling out proof of claim forms. However, it may also be the tip of an iceberg whereby U.S. Bank, National Association; SLS; and Buckley Madole P.C. have in place an intentional scheme to mislead debtor counsel and the court as to the identity of the creditor."*

- *"If this is a statement made by the law firm, then it seems unlikely that it and its employees would not understand who is the creditor in the case and the significance of misrepresenting on the proof of claim of the identity of the creditor.  John Lackey is identified on the website (Buckley Madole) as being an associate with Buckley Madole, having been admitted to the Texas State Bar in 2012."*

- *"The court having a concern that this misstatement under penalty of perjury in the Proof of Claim may well represent a coordinated plan between a sophisticated creditor, sophisticated loan servicing company and sophisticated counsel, the court ordered that a senior manager of SLS with personal knowledge of the policies and procedures of SLS for filing proofs of claim with the United States Bankruptcy Courts; Counsel for SLS; a management shareholder of Buckley Madole P.C., with personal knowledge of the Buckley Madole P.C. policies and procedures for filing proofs of claim in United States Bankruptcy Courts…and show cause as to why the court should not conduct an evidentiary hearing…"*

- *"…US Bank, N.A., SLS and Buckley Madole P.C. have ignored the misidentification and have attempted to justify why they want to continue doing it going forward.  These three very sophisticated parties, a federally insured bank, nationwide loan servicing company and law firm, attempt to blame the Debtor and Debtor's counsel for misidentification of the creating…"*

- *"This Response appears to not only warrant an evidentiary hearing before this court, but referral of this matter to the U.S. Trustee to consider the scope of the misidentification of creditors by U.S. Bank N.A.; SLS and Buckley Madole P.C.."*

The Court then began its own research as to other cases in which Defendants and Buckley Madole P.C. were involved and found that this particular case was not a one off mistake. In at least 9 other cases in just the United States Bankruptcy Court Eastern District of California showed the same set of circumstances involving Defendants and Buckley Madole P.C. One can only imagine the amount of cases nationwide in which SLS and Buckley Madole P.C. engaged in this practice.

In the January 14, 2014 the Court heard the supplemental responses from U.S. Bank N.A., SLS and Buckley Madole P.C collectively referred to as "Respondents". Buckley Madole P.C. admitted it was **their lack of controls** that caused the errors. Additionally, Buckley Madole P.C. in conjunction with SLS asserted through a declaration made by Hilary B. Bonial, an attorney and shareholder in Buckley Madole that they created a 76 page "Proof of Claim Procedure Manual" thus admitting they had no procedure manual prior to January 2014. Plaintiffs contend that the Defendants had no procedure manual, or at best a thin procedure manual, for employees to follow during the non-bankruptcy foreclosure process, handling of loan modifications and a clear understanding of the consumer laws and compliance to them.

Plaintiffs ask this Court to bear in mind all of the previous Court rulings from 2003 going forward in which Defendants with great hubris and defiance just continued on the same path as it has always done. In the 2011 Southern District Bankruptcy Court of New York case Buckley Madole and NBS gave assurances to the court that all of the defects in filing misleading and false claims would be rectified and escaped sanctions in that case. Some two years later in the 2014 Eastern District Bankruptcy Case, again in which the Defendants escaped sanctions, Buckley Madole and Defendants NBS and SLS continually failed to correct and rectify their misconduct regardless of their mea culpa made to the Courts. The United States Trustee (UST) identified at the hearing on January 14, 2014 in the Eastern District Bankruptcy Court that despite the claims that SLS and Buckley Madole had corrected and amended filings, the UST informed the Court that Buckley Madole had not yet filed amended proofs of claims in many pending Chapter 13 cases. As

**SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS**

well, the UST stated to the Court that the Respondents' remediation efforts do not seem to address the valuation orders that incorrectly named SLS as the Creditor. While the Court elected not to impose sanctions on the Respondents, perhaps had the Court known of the previous facts in the prior New York Bankruptcy Court case of 2011 and the Bankruptcy Courts of the Eastern District of California in their 2002-3 rulings this Court perhaps would of have concluded that in regards to the Defendants the Court would have imposed sanctions to stop the unchecked misconduct the Respondents engage in.

### Willamson County Audit Report

In 2013 the Willamson County, Texas Audit Report was released. The Audit was commissioned by Nancy E. Rister, the County Clerk of Willamson County, Texas. The study involved the partial review of the 5,782 assignments that were effectuated by agents of Mortgage Electronic Registration Systems Inc. in response to the severe mortgage crisis in Willaimson County, Texas. The Texas Attorney General requested a copy of this report as well. Of particular interest is the role of the foreclosure mill of Brice Vander Linden & Wernick P.C., in which the owners of Defendant NBS worked and of which the law firm was subsquenty renamed Buckley Madole P.C. in 2013. The report spent considerable time focusing in on an attorney for this firm, Selim Taherzadeh, (see pages 35-38) under the supervision of the owners of now Buckley Madole P.C. Many questions were raised in regards to Mr. Taherzadeh engaging in robosigning and notary fraud. The Audit Report provided evidence to this effect. Plaintiffs have contacted the Law Offices of Selim Taherzadeh in Texas as they started their own law practice after leaving Buckley Madole P.C. in 2014. **Exhibit 2** is the website page of Buckley Madole P.C. updated on 1/1/14 showing Mr. Taherzadeh as an attorney of this firm. Plaintiffs are informed and believes that the practice of robo-signing and other violations were employed during his tenure with Brice Vander Linden & Wernick P.C., Buckley Madole and Defendant NBS. This Audit Report is submitted as demonstrative evidence in support of Plaintiffs allegations.

### Better Business Bureau/Consumer Affairs

**Exhibit 3** is from the Better Business Bureau and the Consumer Affairs website that show in

-8-

recent times hundreds of complaints have been filed against Defendant SLS by the Public. The Better Business Bureau alone recorded 272 complaints against SLS. The disturbing part of the complaints is the common themes that runs through most of the complaints against SLS. Many of these complaints are the same issues that Plaintiffs allege in some of their causes of action. To put into perspective the number of complaints against SLS filed with the Better Business Bureau, **Exhibit 4** is a comparasion report on Facebook on the Better Business Bureau website. Facebook is one of the world's largest companies, employees over 10,000 people and services 1.35 billion customers. Facebook received 1637 complaints.

In checking the Pacer record to make the same comparasion between SLS and Facebook, SLS has almost the same amount of lawsuits filed against SLS as compared to Facebook and yet SLS is less than .0001% the size of Facebook.

**IV: CONCLUSION:**

As one Federal Bankruptcy Judge stated that the misconduct of the Defendants might just be the tip of the iceberg of intentional schemes of the Defendants. Plaintiffs believe that under the surface of this tip is a large body of provable violations of a multitude of laws that the Defendants engaged in against the Plaitiffs. The Plaintiffs do not believe that it would take a leap of faith for this Court to come to the conclusion that "where there is smoke, there is fire" and should Dismiss the Defendants Motion to Dismiss.

June 5, 2015                                        Respectfully Submitted:

                                                    _____/s/_____
                                                    Bruce Portner in Pro Se
                                                    _____/s/_____
                                                    Kimberly Portner in Pro Se

**SUPPLEMENTAL RESPONSE TO MOTION TO DISMISS**